IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 8, 2008

## STATE OF TENNESSEE v. KHALFANI MARION

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-01051      James C. Beasley, Jr., Judge**

---

### No. W2006-02444-CCA-R3-CD  - Filed June 2, 2008

---

The defendant, Khalfani Marion, was convicted of four counts of aggravated robbery, a Class B felony, and one count of especially aggravated kidnapping, a Class A felony. The trial court merged the four aggravated robbery counts into two convictions and sentenced the defendant to twenty years for the especially aggravated kidnapping conviction and nine years for each aggravated robbery conviction, ordering all sentences to be served consecutively on the basis that the defendant was a dangerous offender. On appeal, the defendant argues that the evidence was insufficient to support his convictions and alleges numerous sentencing errors by the trial court. We conclude that the evidence was sufficient to support the defendant's convictions and that the trial court did not err in imposing consecutive sentences. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN, JJ., joined.

Rebecca G. Coffee, Memphis, Tennessee, for the appellant, Khalfani Marion.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Elisha Wilkins[1] testified that during the evening of May 14, 2002, she was asleep in the den of her boyfriend's house when she was awakened by a knock at the back door. She looked through a window in the kitchen and saw a man standing at the back door. The man asked her if "Chris" was home, and she replied in the negative and started to walk away. The man knocked again, and when Wilkins looked through the window, she saw a taller man, holding a gun, outside the door. Then seven or eight men, most of whom had guns, broke down the door and entered the house. One of the men picked up Wilkins by the hair and asked her where was the money. After Wilkins informed the men that she did not know where any money was located, the men took the keys to her truck, her wallet, and her identification. Wilkins was standing at the back door when Montreal Lyons, a codefendant, told her that she was going to die because she had seen his face.

The men forced Wilkins into the backseat of her truck and drove to the home of her friend, Latonya Cooper. She remembered seeing a burgundy van behind her truck as she left her boyfriend's house. When they arrived at Cooper's house, Lyons put a gun to her head and ordered her to knock on the door, while the other men hid from view. When Cooper recognized Wilkins, she opened the door, and the men entered Cooper's house. Wilkins testified that all of the men who were present at her boyfriend's house were also present at Cooper's house. Cooper asked for and received permission to close the door to her children's bedroom so they would not be awakened. Then the men ordered Cooper into her bedroom and Wilkins into a bathroom. The men told Cooper and Wilkins that they should reveal where the money was kept because they were going to die anyway. Lyons told the men to go get one of Cooper's children in order to induce the women to give them the money. Mario Morris, a codefendant, took Cooper and Wilkins into a bedroom and held them at gunpoint. Cooper's phone rang, and one of the men told Cooper to answer it and that if she said the wrong thing she would be shot. After the phone call ended, the men forced Wilkins and Cooper to lie down on the living room floor, where they remained until the men left the house and Cooper's husband arrived.

On June 8, 2002, Wilkins spotted the defendant at a bus station in Memphis and alerted police, who arrested him. She testified that on the night of the robbery, the defendant told her that he knew all about her and that she would die because she had seen the faces of her attackers. She said she was scared that night and thought the assailants were going to kill her. On cross-examination, Wilkins testified that she could not remember whether the defendant was carrying a gun that night.

LaTonya Cooper testified that on May 14, 2002, she was home with her five- and six-year-old daughters when she heard the doorbell ring. She asked who was at the door and opened it when Wilkins replied. Several men with guns walked into her home and locked the door behind them. Cooper asked the men not to wake her daughters, and the defendant told her to close her daughters' bedroom door. The men demanded money, and Cooper told them that her purse was in her bedroom.

[1] At the time of trial, the witness's name was Elisha Winford rather than Elisha Wilkins. We will, however, refer to her by the name "Wilkins," since that was the name by which she was known at the time of the crimes and the name by which she was referred to throughout the trial.

The defendant accompanied her to the bedroom, took money from Cooper's purse, and searched her dresser. Lyons was upset that Cooper did not produce more money and threatened to kill Cooper, her children, and Wilkins.

Cooper testified that Lyons and Morris were carrying guns, but she could not recall whether the defendant was carrying a gun. She stated that the men took money, jewelry, a DVD player, a laptop computer, and her truck from her. At one point, her telephone rang, and Lyons instructed Morris to point his gun at her and shoot her if she said anything wrong. After the phone call, there was a knock at the door and the defendant told her to answer it while telling Morris to "spray her ass" if she ran outside. Cooper and Wilkins were then ordered to lie face down in the living room. Believing she was about to be shot, Cooper begged the men to take her to a different location so that her children would not hear or see anything. Lyons told her she could lie down or be shot down. Cooper and Wilkins complied, and the men exited through the back door.

Officer John Chevalier and Lieutenant Daniel Parris of the Memphis Police Department testified that they responded to the residence of Wilkins' boyfriend after the robbery and that the back door had been kicked in and the house appeared to have been ransacked.

Memphis Police Department Officer Larry Skaggs testified that he was working downtown on June 8, 2002, when he was approached by a woman who told him that she had seen a man at the bus station who had robbed her and burglarized her house. He asked the woman for a description of the man and then went to the bus station where he located the defendant, who matched the description he had been given. Officer Skaggs arrested the defendant and turned him over to another officer's custody to be transported to the police station. Memphis Police Department Lieutenant Connie Maness testified that she showed Wilkins a photograph of the defendant that night, and Wilkins confirmed that the defendant was the person who invaded her home.

Sergeant Timothy Green of the Memphis Police Department testified that he showed a six-person photographic spreadsheet containing the defendant's photograph to Latonya Cooper on June 8, 2002, and that Cooper circled the defendant's picture, identifying him as one of her assailants. On cross-examination, Sergeant Green testified that the defendant did not possess any of the stolen property when he was arrested.

The defendant elected not to testify or present other proof. Following deliberations, the jury found the defendant guilty of two counts of the aggravated robbery of Elisha Wilkins (Counts 1 and 2), two counts of the aggravated robbery of LaTonya Cooper (Counts 4 and 5), and one count of the especially aggravated kidnapping of Elisha Wilkins (Count 3). Because Counts 1 and 2 and Counts 4 and 5 alleged alternative means of committing the same offense against the same victim, the trial court merged each pair of counts into a single conviction.

At the sentencing hearing, LaTonya Cooper testified that the robbery caused her to live in constant fear. She stated that she woke up three to four times each night to check on her children and had moved away from the Memphis area because she did not feel safe there. She testified, over

defense objection, that Wilkins told her that as the men were leaving on the night of the robbery, one of them placed a gun in Wilkins' mouth while she was standing on Cooper's front porch, scaring her and causing her to urinate on the porch.

For the aggravated robbery conviction of Wilkins, the trial court sentenced the defendant as a Range I, standard offender to nine years, applying two enhancement factors:  (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; and (2) the defendant was a leader in the commission of an offense involving two or more criminal actors.  Tenn. Code Ann. § 40-35-114(1), (2) (2006).  On the conviction for the aggravated robbery of Cooper, the court sentenced the defendant as a Range I, standard offender to nine years, finding in addition to the prior criminal history and leadership enhancement factors that the defendant treated the victim with exceptional cruelty during the commission of the offense and that the defendant had no hesitation about committing a crime when the risk to human life was high.  Tenn. Code Ann. § 40-35-114(1), (2), (5), (10).  On the especially aggravated kidnapping conviction, the court sentenced the defendant as a Range I, violent offender to twenty years, finding the prior criminal history and leadership enhancement factors.  The court found that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high, and ordered that all sentences be served consecutively in the Department of Correction, for an effective sentence of thirty-eight years.

## ANALYSIS

The defendant argues that the evidence was insufficient to support his convictions and that the trial court erred at sentencing when it:  (1) found him to be a dangerous offender and imposed consecutive sentencing on that basis; (2) found him to be a professional criminal; (3) imposed consecutive sentencing on the basis that the crime was "inherently dangerous"; (4) applied two enhancement factors which were elements of the underlying offenses; and (5) allowed Cooper to testify to Wilkins' mental state at the time of the offenses.  The State argues that the evidence was sufficient to support the defendant's convictions and that the trial court properly sentenced the defendant.  As we will explain, we affirm the judgments of the trial court.

### I.  Sufficiency of the Evidence

Where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

-4-

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear, when either (a) accomplished with a deadly weapon or (b) the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-402(a) (2006). As relevant here, especially aggravated kidnapping is the knowing, unlawful removal or confinement of another so as to interfere substantially with the other's liberty, when accomplished with a deadly weapon. Id. § 39-13-305(a)(1).

The defendant argues that the evidence was insufficient because "the State's proof only consisted of two purported eyewitnesses who were unable to state how many people were actually involved. The State provided no proof of direct evidence of the [defendant's] involvement such as fingerprints etc." He contends that "[i]t is clear that the jury was swayed by the emotional nature of the testimony and that the many different gaps and inconsistencies in the testimony were substantial enough to warrant a finding by this court that each and every element of each and every charge was not proven beyond a reasonable doubt." As we will explain, we agree with the State that the evidence was sufficient to support the defendant's convictions.

The proof belies the defendant's claim that the State did not present direct evidence of his involvement in the crimes. Viewing the evidence in the light most favorable to the State, Elisha Wilkins testified that seven or eight men, most of them carrying guns, broke down her back door and entered her boyfriend's house demanding money. The men took her keys, identification, and wallet and then forced her into the backseat of her truck and drove to LaTonya Cooper's house. Montreal

Lyons placed a gun to Wilkins' head and forced her to knock on Cooper's door. The men held Cooper and Wilkins at gunpoint, demanded money from Cooper, and threatened to shoot her and her children. Several weeks later, Wilkins spotted the defendant at a bus station and identified him to police officers as one of the men who burglarized her boyfriend's house and kidnapped her. When shown a photograph of the defendant later that night, Wilkins confirmed that he was one of her assailants.

LaTonya Cooper testified that during the robbery, the defendant took her to her bedroom, removed money from her purse, and searched her dresser. When Cooper heard a knock at her door, the defendant instructed her to answer it and told Mario Morris to "spray her ass" if Cooper attempted to run outside. Sergeant Timothy Green testified that, following the defendant's arrest, Cooper identified him from a six-person photospread as one of the assailants.

The foregoing proof was sufficient to support the defendant's convictions for aggravated robbery and especially aggravated kidnapping. The defendant's argument is unfounded that the proof is insufficient because it is based solely on the testimony of the two victims. Questions regarding the weight and credibility to be accorded to the evidence are resolved by the jury as trier of fact. The evidence is such that a reasonable jury could have made that determination.

## II. Sentencing

As we will discuss, the defendant argues both against the length of his sentences and the fact they were to be served consecutively. When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411

(Tenn. Crim. App. 2001). Enhancement factors may be considered only if they are "appropriate for the offense," and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114.

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The defendant alleges numerous sentencing errors, which we will address in turn. Because his claims are closely interrelated that the trial court erred in finding him a dangerous offender and in imposing consecutive sentencing, we will analyze them simultaneously. The defendant argues that he is not a dangerous offender and that the trial court "made nothing more than a naked assertion in labeling him as such." He contends that the court erred in imposing consecutive sentencing because he does not satisfy any of the criteria for consecutive sentencing set out in Tennessee Rule of Criminal Procedure 32(c).

Initially we must note that Rule 32(c) governs only *mandatory* consecutive sentencing. A trial court, in its sound discretion, may also impose consecutive sentencing in accordance with Tennessee Code Annotated section 40-35-115, if it finds any of the following criteria:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person as declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. Here, the trial court applied, as its basis for imposing consecutive sentencing, criterion (4): "The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Id. § 40-35-115(b)(4) (2006). Criterion four has been specifically discussed by our supreme court in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), where the court held:

> [T]he imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.

Id. at 939. This requirement of additional findings is limited to criterion four. See State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

> In imposing consecutive sentencing, the trial court stated:
>
> The Court has already found and will reiterate the fact that the Court finds that the circumstances surrounding the commission of these offenses was aggravated [sic]. The Court also finds that the aggregate length of the sentences reasonably relate[s] to the offense for which the defendants stand convicted and also the Court finds that confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to lead a productive life and the defendant's resort to criminal activity in furtherance of an anti-societal lifestyle.
>
> . . . .
>
> The Court feels that each of these three individuals is a very dangerous offender to our society, a dangerous offender within our community. The very nature of these crimes, the very manner in which they were carried out wreaked terror and havoc within our community.

The trial court made the detailed factual findings mandated by Wilkerson, and the record supports its determination that consecutive sentencing was appropriate.

The defendant next argues that the trial court erred in finding that he is "a professional criminal as defined under [Tennessee Code Annotated] Section 40-35-111," because there was no proof presented at trial or sentencing that he knowingly devoted himself to criminal acts as a major

source of his livelihood or derived substantial resources from his criminal acts.[2]  However, the defendant's presentence report, which was entered into evidence as an exhibit at the sentencing hearing, reflects prior convictions for driving while license suspended, cancelled, or revoked; attempted forgery; criminal impersonation; possession of a controlled substance; use of false identification; violation of the open container law; and theft under $500.[3]  Moreover, assuming *arguendo* that the trial court erred in finding that the defendant was a professional criminal, such error was harmless.  We previously determined that the trial court properly imposed consecutive sentencing based on the dangerous offender criterion; as set out above, the existence of a single criterion is sufficient to support consecutive sentencing.  The defendant is not entitled to relief on this issue.

Additionally, the defendant asserts that "the fact that a crime is 'inherently dangerous' does not in and of itself require consecutive sentencing" and that the trial court erroneously imposed consecutive sentencing on this basis.  The defendant cites no legal authority in support of this contention, and the appellate record does not reflect that the trial court imposed consecutive sentencing on this basis.  This issue is without merit.

As we understand, the defendant challenges the trial court's application of two enhancement factors to the sentences imposed for the aggravated robbery of LaTonya Cooper:  that he had no hesitation about committing an act in which the risk to human life was high and that the crime was committed under circumstances where the potential for bodily injury was great.  He argues that these factors are elements of the offense of aggravated robbery and therefore may not be used to enhance his sentence for this offense.  The defendant has filed a reply brief in which, for the first time, the claim is raised, as we understand, that he should be resentenced because certain of the findings upon which the court based the sentencing were "unsupported in the record."  Additionally, the defendant argues that he could "elect or waive <u>Blakely</u>" and, since there is no waiver in the record on appeal showing a waiver, the "sentencing should be set aside."  The defendant makes no claim as to whether the trial court utilized the pre- or post-2005 version of the sentencing act as to him.  We note that the defendant has not argued on appeal that the trial court erred in concluding that an enhanced sentence was justified because of the defendant's prior history of criminal convictions.

We will consider this argument.  In <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004), the United States Supreme Court ruled that any fact, other than that of a prior conviction, used to enhance a defendant's sentence beyond the statutory minimum must be found by a jury beyond a reasonable doubt.  <u>Id.</u> at 301, 124 S. Ct. at 2536.  Subsequently, our supreme court in <u>State v. Gomez</u>, 239 S.W.3d 733, 740 (Tenn. 2007), concluded that, applying <u>Blakely</u> to Tennessee's pre-2005 sentencing law, the judge could enhance a sentence beyond a presumptive minimum based on judicially-determined facts in addition to a prior conviction.  Prior to this, our supreme court had

_____

[2] His argument in this regard is unclear, as section 40-35-111 governs authorized sentences for offenses, prison terms or fines, and reports, and does not define the term "professional criminal."

[3] The defendant's presentence report is included in the appellate record of one of the codefendants, Mario Morris.

held that Blakely did not apply to Tennessee's pre-2005 sentencing law. State v. Gomez, 163 S.W.3d 632 (Tenn. 2005), vacated and remanded by Gomez v. Tennessee, __ U.S. __, 127 S. Ct. 1209 (2007).

Subsequently, this court has held that a defendant who fails to raise the Blakely issue in the trial court waives the issue and may seek relief only under a "plain error" review. See State v. John William Matkin, III, No. E2005-02946-CCA-R3-CD, 2007 WL 4117362, at *11 (Tenn. Crim. App. Nov. 19, 2007), perm. to appeal denied (Tenn. Apr. 7, 2008).

When determining whether a plain error review is appropriate, the following factors must be established: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the error [must be] 'necessary to do substantial justice.'" State v. Terry, 118 S.W.3d 355, 360 (Tenn. 2003) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). In addition, "[a]ll five factors must be established by the record before" an appellate court may "recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Id. (citing State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000)). Rule 52(b) of the Tennessee Rules of Criminal Procedure provides: "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." See Tenn. R. App. P. 36(b).

In the present appeal, the defendant's argument in his reply brief, as we have set out, is that since he committed his crimes before the enactment of the 2005 amendments to the sentencing law, was sentenced after that date, and the record on appeal does not contain a waiver of his *ex post facto* rights, he must be resentenced. The defendant does not argue that we should make a plain error review of his sentencing. It is clear that, even if this court makes a plain error review of the defendant's sentencing, he is not entitled to relief. One of the enhancement factors applied by the trial court was the fact that the defendant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range. Thus, since this enhancement factor is applicable both before and after the amendment to the 1989 Sentencing Act and the defendant does not claim that it was inapplicable, it is not necessary that we consider the defendant's claims in this regard to do substantial justice, and a plain error review is not appropriate.

Finally, the defendant argues that the trial court erred in permitting LaTonya Cooper to testify at the sentencing hearing about how Elisha Wilkins felt during the commission of the offenses. He contends that the trial court permitted Cooper to testify "as to the intensity of Ms. Wilkins' fear after the suspects fled and left her unharmed." As we understand, the defendant is referring to the following colloquy between the State and Cooper:

[Counsel for the State]: Ms. Cooper, did Ms. Wilkins tell you that night when the defendants left the house what they did to her when she was standing on your front porch?

-10-

[The Witness]: Yes. Someone had put gun [sic] to her mouth, in her mouth, and she was so afraid that she peed on my porch.

We do not entirely understand the nature of the defendant's objection to this testimony. To the extent he argues that such testimony was inadmissible hearsay, we disagree. Reliable hearsay is admissible at a sentencing hearing if the opposing party is accorded a fair opportunity to rebut such evidence. Tenn. Code Ann. § 40-35-209(b); State v. Blackhurst, 70 S.W.3d 88, 94 (Tenn. Crim. App. 2001). This claim is without merit.

Thus, as to the setting of the defendant's sentences, we conclude that his extensive prior record of convictions, which he does not contest, justifies the enhancements. See State v. Gosnell, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001).

## CONCLUSION

We conclude that the evidence was sufficient to sustain the defendant's convictions and that the trial court did not err in its imposition of consecutive sentencing. Accordingly, we affirm the judgments of conviction and the imposition of consecutive sentencing.

_____
ALAN E. GLENN, JUDGE